UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

EDMOND THORNTON

VERSUS : CIVIL ACTION NO.: 6:21-CV-04131

LAFAYETTE CITY-PARISH CONSOLIDATED   JUDGE ROBERT SUMMERHAYS;
GOVERNMENT, ET AL   MAG. JUDGE HANNA

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

**RULE 26(f) REPORT**

Trial Date: August 7, 2023 at 9:30 a.m.

Pretrial Conference Date: July 19, 2023 at 11:00 a.m.

Type of Trial: ☐ JURY   ☒ BENCH

Estimated length of trial is 3 court days.

1. **Participants:**

   Mr. Robert B. Brahan, Jr., counsel for Plaintiff, Edmond Thornton;

   Mr. Bryan D. Scofield, counsel for Defendant, Lafayette City-Parish Consolidated Government; AND

   Ms. Joy C. Rabalais, counsel for Defendant, Officer Alex Ritter, in His Individual Capacity

2. **Affirmation Regarding Initial Disclosures:**

   The parties participating in the conference affirm that they have complied with the initial disclosure requirements of Fed. R.Civ.P. 26 (a) (1).

3. **Jurisdictional Basis:**

   Jurisdiction in this case arises under 28 U.S.C. § 1331 as to the claims alleged under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and supplemental jurisdiction in this case arises

under 28 U.S.C. § 1367 as to plaintiff's state tort claims. Jurisdiction is not disputed in this matter.

4. **Brief Description of Claims:**

On the evening of December 31, 2020, plaintiff Edmond Thornton was arrested and taken to the Lafayette Parish Jail by defendant Alex Ritter, who was, at all times relevant herein, acting under color of state law and in the course and scope of his employment with defendant, the Lafayette City-Parish Consolidated Government ("LCG"), who is vicariously liable for the actions of Ritter. Upon their arrival at the jail, Ritter drove Thornton, who was handcuffed behind his back, from his LCG police cruiser and proceeded to escort plaintiff towards the building.

Suddenly and without provocation, and while plaintiff posed no threat whatsoever, Ritter attacked plaintiff, repeatedly punching plaintiff in his face and jaw, slamming plaintiff's head against the wall of the building, choking plaintiff, and otherwise using excessive and unjustified force in direct violation of plaintiff's civil rights, and in violation of state and federal law. As the result of Ritter's vicious and unprovoked attack, plaintiff suffered severe and debilitating injuries, including broken bones in his face and jaw, which required surgery to repair and which will more likely than not require additional surgeries in the future.

Plaintiff further contends that Ritter is not entitled to qualified immunity because his actions violated Edmond Thornton's constitutional rights which were clearly established at the time of the attack. See, e.g. *Brown v. Lynch*, 524 F. App'x 69, 81 (5th Cir. 2013) ("At the time of the incident, the law was clearly established in this circuit that repeatedly striking a non-resisting suspect is excessive and unreasonable force."); *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) (holding that an officer had used excessive force when he slammed a suspect's face into a vehicle after she had ceased resisting arrest); *Goodson v. City of Corpus Christi,* 202 F.3d 730 (5th Cir. 2000) (officers violated clearly established right when they tackled assault suspect, breaking his shoulder, after he pulled his arm away from grabbing officer and took few steps backward); *Anderson v. McCaleb*, 480 F. App'x 768 (5th Cir. 2012) (concluding that, while a reasonable use of force for purposes of the Fourth Amendment is not capable of precise definition or mechanical application, in December 2008, a police officer "should have known that he could not beat [the suspect] after he stopped resisting arrest").

In addition, plaintiff claims that LCG has a history of failing to properly supervise, monitor, and train Lafayette police officers, like defendant Alex Ritter, as well as overlooking and failing to properly investigate officer misconduct and for implicitly or explicitly adopting careless and reckless policies, customs, or practices which created a consequence-free environment where defendant Alex Ritter felt free to violate Edmond Thornton's constitutional rights and commit negligent acts against plaintiff as described above.

Finally, plaintiff contends that LCG failed to properly scrutinize Alex Ritter's background prior to hiring him and negligently retained him as their employee without proper training, monitoring, supervision, and/or discipline. These failures on the part of LCG again created a

consequence-free environment in which defendant Alex Ritter felt free to violate Edmond Thornton's constitutional rights and commit negligent acts against plaintiff as described above.

5. **Brief Statement of Responses:**

Defendant, OFFICER ALEX RITTER, INDIVIDUALLY, denies that he is guilty of any violation of the plaintiff's constitutional rights generally, and specifically, the Fourth and/or Fourteenth Amendments to the U.S. Constitution. Defendant further contends that he acted in good faith and with probable cause as to each and every act or omission alleged by the plaintiff, and that reasonable force was used under the facts and circumstances as faced by Officer Ritter. Specifically, Officer Ritter contends that he is entitled to qualified immunity from suit and liability in his individual capacity. Moreover, defendant contends that his actions did not constitute deliberate indifference to the rights of plaintiff. Defendant contends that any action and/or inaction alleged by the plaintiff did not amount to deliberate indifference and/or reckless disregard or conduct so arbitrary as to shock the conscience necessary for a 14th Amendment due process violation, pursuant to *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708 (1998). Only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation. *County of Sacramento, supra.*

Further, defendant shows that on December 31, 2020, he responded to a call regarding an armed robbery with a knife in progress call, where it was reported that the suspect (plaintiff) was in front of a room at Plantation Inn banging on a room door. The suspect was described as a white male wearing no shirt and khaki pants. When Officer Ritter arrived at the location, he observed a white male wearing no shirt and khaki pants in front of the reported room at Plantago Inn. Officer Ritter's first impression of plaintiff was that he was heavily intoxicated, as he was swaying back and forth while walking, had slurred speech and was unsure in his balance. For officer safety (and since this was a felony call), Officer Ritter patted down plaintiff for officer safety. During this time, plaintiff was passively resisting, and Officer Ritter held onto his arm as he was having difficulty standing and walking.

The plaintiff was brought to the front push bumper of Officer Ritter's unit, when he noticed dried blood around plaintiff's lips. He had no active bleeding from his mouth at this time. Officer Ritter advised plaintiff that he would be detained so the officers could figure out what was going on. Plaintiff requested to be cuffed to the vehicle (which is against instruction on detainment), and Officer Ritter attempted to handcuff plaintiff, plaintiff failed to comply with commands being given. After numerous commands, plaintiff finally was cuffed and placed inside the backseat of Officer Ritter's unit. After conversing with the victim, Officer Ritter returned to his unit when he advised plaintiff of his *Miranda* rights and that he was being arrested for armed robbery and simple battery. While in the back seat of Officer Ritter's unit, plaintiff began banging his head against the window of the unit. Plaintiff did not cease banging his head and body against the backseat door of the unit after being advised to stop.

Officer Ritter then transported plaintiff to Lafayette Parish Correctional Center (LPCC) for booking.  Plaintiff continued to yell and scream during transport. He threatened Officer Ritter that he would find Officer Ritter's family, as well.

Upon arrival at LPCC, Officer Ritter advised Mr. Thornton to cooperate with the intake. He advised he would cooperate. Prior to getting out of Officer Ritter's unit, there was a safety concern outside of his window. An unknown black female was standing within a foot of Officer Ritter's marked patrol unit. The unknown female eventually walked away in an unknown direction.

As Officer Ritter  assisted Mr. Thornton out of his unit, he noticed fresh blood on plaintiff's  khaki pants which was a result of his continued self harm/mutilation. Plaintiff again became aggressive and was not complying with verbal commands to exit the vehicle. Once he did finally exit, Officer Ritter kept his left hand on plaintiff's right arm while walking to the intake door. Plaintiff was passively resisting and trying to pull back toward Officer Ritter's unit. Plaintiff suddenly sprung forward, and Officer Ritter perceived that as an attempt to escape his grip. Thereafter, Officer Ritter kept his hand on plaintiff's right arm and placed him on the wall of the LPCC building.  Officer Ritter reached over to press the button to the intake door (which did not immediately unlock). LPCC is manned by the Lafayette Parish Sheriff s Office deputies. The normal procedure upon arrival with a prisoner is to press the button to unlock the door to enter what is referred to as "the cop room." It has been Officer Ritter's experience that upon pressing the unlock button, the door disengages within 10- l5 seconds. The door did not open this time.

Officer Ritter steadily provided loud verbal commands to Mr. Thornton to stop resisting and cooperate. He refused to comply and plaintiff's elbow struck the center of Officer Ritter's chest, which knocked Officer Ritter's BWC and lapel microphone off of his uniform. As Officer Ritter tried to keep Mr. Thornton on the wall for both of their safety, plaintiff continued trying to turn toward Officer Ritter in an attempt to disengage from the officer's grasp. When plaintiff delivered a second elbow strike to Officer Ritter's chest, Officer Ritter pushed plaintiff firmly against the wall.

While trying to gain and maintain control of Mr. Thornton (now an actively resisting and aggressive armed robbery suspect), and waiting for an LPSO Deputy to come to Officer Ritter's aid, plaintiff continued to thrash himself back toward Officer Ritter in an attempt to disengage himself from the officer's grasp. Officer Ritter feared that had plaintiff been able to maneuver into a position facing Officer Ritter, that plaintiff would attempt to head-butt the officer, bite officer, or otherwise maneuver to escape the officer's hold.

In accordance with Officer Ritter's training, LPD General Order 301.12, relevant statutory and jurisprudential law, and because Mr. Thornton continued to ignore the officer's presence and repeated verbal commands, Officer Ritter transitioned to a combination of soft and hard empty hand control, which he assessed to be reasonably necessary for his safety and to maintain control of a non-compliant felony suspect. Officer Ritter attempted to use his hands and body to guide, hold, and restrain Mr. Thornton, and also delivered several empty closed fist

strikes to his jaw line until compliance was rendered and plaintiff stopped resisting. Officer Ritter was finally able to control plaintiff into the corner wall of the LPCC building while still waiting for aid and assistance from a LPSO Correctional Deputy (which took approximately 1 minute or so).

After around a minute, the LPCC door finally unlocked and Officer Ritter was able to escort Mr. Thornton inside. Officer Ritter instructed plaintiff to sit on the bench at which time a LPSO Deputy asked if plaintiff needed to be handcuffed to the bench, and Officer Ritter advised that plaintiff should be cuffed to a bench. The Deputy handcuffed plaintiff to the bench as he was still highly aggressive.

Officer Ritter called for a supervisor to be en route to LPCC for a notary, as well as to prepare a use of force report. The Deputy returned to the intake room and uncuffed Mr. Thornton from the bench and stated he needed to be transported to the hospital and cleared prior to being booked. Sgt. Ryan Shanahan was en route to LPCC, as well.  Sgt. Shanahan arrived at LPCC and attempted to take pictures of Mr. Thornton who was non-compliant and did not want pictures taken.

Officer Ritter transported Mr. Thornton to University Hospital Clinic (UHC) where he was seen by Dr. Rodriguez. Plaintiff advised that he was experiencing pain in his hand and knuckles (likely from punching the victim at Plantation Inn). X-rays where taken of plaintiff's hand. Plaintiff then advised Dr. Rodriguez of pain in his jaw. After examination, Dr. Rodriguez diagnosed an abscessed tooth which was causing pain and swelling in his mouth. Plaintiff was prescribed antibiotics and cleared for booking. Officer Ritter than again transported plaintiff to LPCC where he was booked for armed robbery and simple battery.

By Bill of Information dated February 2, 2021, plaintiff was charged with armed robbery, attempted simple escape from custody, battery on a police officer and resisting arrest.  Officer Ritter was listed as the victim in the Bill of Information relative to the counts involving attempted simple escape from custody, battery on a police officer and resisting arrest.  On December 2, 2021, the armed robbery charge was amended to simple battery, and plaintiff pled guilty to the amended charge. In exchange for his plea, the remaining charges were dismissed.

Defendant affirmatively pleads the defenses, immunities, and protections afforded him by state and federal law generally, and specifically, La. R.S. 9:2800.10, La. R.S. 9:2800.19, La. R.S. 9:2798.1, and La. C.Cr.P. art. 201.

In addition, defendant shows that the only force used on plaintiff was during plaintiff's lawful arrest, which in and of itself does not constitute excessive force as a matter of law. An officer making a lawful arrest may use reasonable force to overcome any resistance by the person being arrested under La. C.Cr.P. art. 220. Moreover, defendant denies any negligence and/or intentional acts and contends that exigent and/or emergency circumstances justified each and every act or omission alleged by the plaintiff.  Likewise, defendant asserts that the federal and state standards of review regarding use of force are the same pursuant to *Reneau v. City of New Orleans*, 2004 WL 1497711 (E.D. La. 2004), citing *Kyle v. City of New Orleans*, 353 So.2d 969,

973 (La. 1977) and *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 656 So.2d 318; see also, *Bellamore v. City of Westwego*, 2001 WL 214030 (E.D. La. 2001), such that plaintiff's state law claims are likewise without merit, since the force used was reasonable under the facts and circumstances of this case. Alternatively, defendant shows that he is entitled to qualified immunity for plaintiff's claims under the Louisiana Constitution as per *Moresi v. State Through Dept. Of Wildlife and Fisheries*, 567 So.2d 1081 (La. 1990). Further, defendant reasserts all defenses pled in his answer.

Finally, Officer Ritter shows that he cannot be liable for preexisting medical conditions which were in no way caused or exacerbated by any alleged acts or failure to act.

Defendant, LCG, adopts the Brief Statement of Responses asserted on behalf of Officer Alex Ritter, individually. In addition, the LCG denies that it has allowed a culture and environment to develop within the Lafayette Police Department, which allowed or tolerated the use of excessive and unjustified force. The LCG also properly and adequately investigates and disciplines officers, who use excessive and unjustified force. Further, Alex Ritter and the Lafayette Police Department officers were properly hired, trained in accordance with law and were supervised to the extent possible. The LCG never adopted careless and reckless policies, customs or practices which had anything to do with Plaintiff's alleged complaints. The LCG also never deprived Plaintiff of any constitutionally protected rights. The LCG is not vicariously liable for any constitutional violations and was never deliberately indifferent with respect to Plaintiff's allegations.

The LCG admits that Officer Ritter was in the course and scope of his employment with the Lafayette Police Department at the time of his felony arrest incident. However, the LCG denies that Plaintiff sustained any injuries as a result of the alleged incident. Further, no defendant is liable for any injuries sustained by Plaintiff, when he intentionally struck his head multiple times in the police unit or elsewhere. The LCG is also not liable for any pre-existing injuries and/or conditions of Plaintiff. In fact, the LCG claims that Plaintiff sustained no injuries in the alleged incident, and if he did, the injuries were caused by his own criminal and intentional conduct.

6. **Anticipated Amendments to Pleadings and Motions:**

Plaintiff may amend his complaint to add any additional claims against defendants supported by any evidence revealed in discovery. In addition, plaintiff may file motions in limine and/or *Daubert* motions as necessary.

Defendant, Officer Alex Ritter in His Individual Capacity: Defendant may file a Rule 56 Motion for Summary Judgment once discovery is completed. In the future, Defendant may file Motions in Limine and/or *Daubert* Motions regarding various evidentiary matters, including expert testimony.

Defendant, LCG, may file a Motion for Summary Judgment once more discovery is conducted.  The LCG may also file Motions in Limine and/or *Daubert* Motions regarding various evidentiary matters, including expert testimony.

7. **Anticipated Expert Witnesses:**

Plaintiff may retain an expert in the field of police practices and use of force. Depending on the information revealed in discovery, plaintiff may name additional experts in accordance with the Court's scheduling order. Further, plaintiff will call his treating doctors to provide expert testimony regarding his injuries and treatment.

Defendant, Officer Alex Ritter, in His Individual Capacity: Defendant intends to use George Armbruster, Expert in the field of police policy, procedures and use of force. Should defendant determine that any additional experts are needed, said expert will be named and otherwise disclosed by the deadline contained in the Court's Scheduling Order.  Moreover, should plaintiff engage experts by the applicable deadline contained in the Court's Scheduling Order, then defendant wishes to preserve the right to retain any expert needed and will name said expert by the deadlines contained in the Court's scheduling order.

Defendant, the LCG, may also retain Mr. Armbruster as set forth in Officer Ritter's assertion above.  Should the LCG determine that any additional experts are needed, said expert will be named and otherwise disclosed by the deadline contained in the Court's Scheduling Order.  Moreover, should Plaintiff engage experts by the applicable deadline contained in the Court's Scheduling Order, then Defendant wishes to preserve the right to retain any expert needed and will name said expert by the deadlines contained in the Court's Scheduling Order.

8. **Discovery Plan:**

The parties do not anticipate that this case will require a specialized discovery plan.

9. **Stipulations:**

Officer Alex Ritter was in the course and scope of his employment as a police officer at the time of the incident sued upon.

Plaintiff pled guilty to simple battery in connection with the incident in question.

10. **Major Issues of Fact and Law in Dispute:**

Parties contend the issues of fact and law in dispute are:

a)      The facts and circumstances surrounding the incident sued upon;

b)      Whether or not the constitutional civil rights of plaintiff were violated;

      c)      Whether or not any injuries or damages resulted, either physically or mentally, directly or indirectly as a result of the incident herein;

      d)      Whether the actions of Officer Ritter was in deliberate indifference to the rights of plaintiff;

      e)      Whether or not Officer Ritter acted negligently and/or committed any intentional acts;

      f)      Whether there was exigent and/or emergency circumstances justifying all actions on the part of Officer Ritter under the circumstances he faced;

      g)      Whether there is medical causation for any/all physical and emotional injuries claimed by plaintiff;

      h)      Whether defendant, Officer Ritter, is entitled to qualified immunity from liability and/or suit in his individual capacity;

      i)      Whether or not the plaintiff suffered a deprivation of any constitutional rights;

      j)      Whether or not Lafayette City-Parish Consolidated Government is liable under a theory of respondent superior for plaintiff's state tort law claims;

      k)      Whether or not the Officer Ritter is entitled to discretionary and/or statutory immunity for plaintiff's state tort law claims;

      l)      Whether or not Officer Ritter used excessive force;

      m)      Whether the LCG was deliberately indifferent to the rights of Plaintiff.

      n)      Whether Officer Ritter was properly hired, trained and/or supervised.

      o)      Whether the LCG's policies, customs and practices were proper under the circumstances.

      p)      Whether the LCG or Officer Ritter were negligent or at fault for the alleged incident.

      q)      Whether Plaintiff sustained any damages or whether any injuries were self-inflicted or pre-existed.

      r)      Any and all other issues of fact or law inherent in the pleadings filed into this matter.

11. **Related Case Information:**

    None.

12. **Surveillance Evidence:**

    Counsel for the parties wish to opt in to the Court's prior procedure regarding surveillance evidence.

13. **Alternative Dispute Resolution (ADR):**

    Plaintiff submits that alternative dispute resolution is premature at this time, but will consider ADR ins the future in accordance with the Court's scheduling order.

    Defendant, Officer Alex Ritter, in His Individual Capacity: Defendant is not agreeable to submitting to Alternative Dispute Resolution at this time. Should this position change, counsel for defendant will notify all parties.

    Defendant, the LCG, contends that it is premature to submit to Alternative Dispute Resolution at this time. Should this position change, the LCG will notify all parties.

14. **Rule 16 Conference:**

    Plaintiff:   Does not believe that a Rule 16 Conference would be beneficial at this time.

    Defendants: Do not believe that a Rule 16 Conference would be beneficial at this time.

15. **Electronic Courtroom:**

    Because of the early stages of this litigation, the parties are uncertain at this time as to the number of documents they reasonably anticipate will be offered as evidence at the trial of this matter. However, the parties expect the number of document pages will exceed 25 and shall comply with the court's requirement that the documents be burned onto a disk and presented and/or demonstrated via CD Rom.

16. **Electronically Generated Exhibits or Aids:**

    The parties do not anticipate using any computer generated and/or electronically-generated exhibits or demonstrative aids at trial.

17. **Handicap Provisions:**

The parties do not anticipate that any need for handicap accommodations will be necessary, but will alert the Court in a timely manner should the need arise.

18. **Consent Trials:**

The parties are aware of their right to consent to a trial by Magistrate Judge, pursuant to 28 U.S.C. §636(c).

Plaintiff does not wish to proceed to trial before the Magistrate Judge at this time.

Defendants do not wish to proceed to trial before the Magistrate Judge at this time.

## CERTIFICATION BY COUNSEL

I HEREBY CERTIFY THAT THE FOREGOING IS ACCURATE AND COMPLETE.

Respectfully submitted,

BROUSSARD & DAVID, LLC

BY:  /s/ Robert B. Brahan, Jr.
Robert B. Brahan, Jr. (No. 31390)
557 Jefferson Street (Physical)
Post Office Box 3524 (Mailing)
Lafayette, Louisiana 70502-3524
(337) 233-2323 - Phone
(337) 233-2353 - Fax
E-mail: robert@broussard-david.com

ATTORNEYS FOR PLAINTIFF, EDMOND THORNTON

BORNE, WILKES & RABALAIS, L.L.C.

BY:       S/Joy C. Rabalais
JOY C. RABALAIS (26476), T.A.
H. EDWARD BAROUSSE, III (28310)
JORDAN JOHN HENAGAN (36206)
GRANT R. SCHEXNAILDER (40040)
K. ELIZABETH HEINEN (24452)
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, Louisiana 70502-4305
Telephone: (337) 232-1604 Ext. 232
Facsimile: (337) 232-1837
E-mail: rabalais@bornewilkes.com

ATTORNEYS FOR OFFICER ALEX RITTER, IN HIS INDIVIDUAL CAPACITY


**SCOFIELD & RIVERA, L.L.C.**

BY: *s/Bryan D. Scofield*
BRYAN D. SCOFIELD (#19147)
JAMES T. RIVERA (#23913)
JESSICA W. MARCHAND (#34160)
P. O. Box 4422
100 E. Vermilion, Ste. 301
Lafayette, LA 70501
TEL: (337) 235-5353
E-mail: Bryan@scorivlaw.com

ATTORNEYS FOR LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT