UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**EDMOND THORNTON**  CASE NO. 6:21-CV-04131

**VERSUS**  JUDGE ROBERT R. SUMMERHAYS

**A B C INSURANCE CO ET AL**  MAGISTRATE JUDGE DAVID J. AYO

MEMORANDUM RULING

The present matters before the Court are (1) the Motion for Summary Judgment or Partial Summary Judgment [ECF No. 33] filed by Lafayette City-Parish Consolidated Government ("LCG"), and (2) the Motion for Summary Judgment Under Rule 56 [ECF No. 34] filed by Officer Alex Ritter ("Ritter"). Plaintiff opposes both motions.

I.
BACKGROUND

Plaintiff filed suit against Ritter and LCG arising for an incident that occurred on the evening of December 31, 2020.[1] At approximately 11:30 p.m., Ritter received a dispatcher call concerning an armed robbery at the Plantation Inn in Lafayette, Louisiana.[2] Upon arriving at the Plantation Inn, Ritter determined that Plaintiff matched the description of the suspect.[3] Plaintiff admitted that he was intoxicated at the time and had consumed at least six-half pints of "gin and juices."[4] Ritter claims that he struggled to handcuff Plaintiff before placing Plaintiff in the police unit.[5] Ritter then transported Plaintiff to the Lafayette Parish Correctional Center ("LPCC").[6]

---

[1] ECF No. 1.
[2] ECF No. 33, Exhibit 1, Ritter Depo. pp. 46-47.
[3] *Id.*
[4] ECF No. 33, Exhibit 2, Plaintiff Depo. pp. 34, 54, 59, 92.
[5] Ritter Depo. pp. 53-54.
[6] *Id.*, at pp. 51 and 70.

The typical process at this point involves the officer escorting the suspect from the police unit to the door leading into the intake room of LPPC where officers take suspects to complete the booking process—Officer Ritter refers to this room as the "cop room."[7] Sheriff's Department deputies use surveillance cameras to monitor the intake door. Upon arrival at LPCC with an arrestee, an officer pushes a button alerting deputies that the officer is present with a suspect, and the deputies typically open the intake door within seconds of the officer pressing the button.[8] But that did not happen in the present case. Ritter asserts that Plaintiff resisted as Ritter attempted to pull him from the police unit, even though Plaintiff was handcuffed with his hands behind his back.[9] When Plaintiff finally exited the vehicle, Ritter escorted him to the intake door. Plaintiff initially began walking slowly to the intake door and appeared unsteady.[10] When the intake door did not immediately open, Plaintiff pushed back against Ritter. Ritter then pushed Plaintiff face first against the wall of the LPCC.[11] During this time, Plaintiff bucked and bumped Ritter with his back several times and attempted to turn away from the wall to face Ritter.[12] Ritter then placed his hands on Plaintiff's neck, attempting to force Plaintiff to turn back towards the wall and, at one point, appears to cause Plaintiff's head to strike the wall. Ritter then began administering closed hand punches to Plaintiff's face and the back of his head.[13] Ritter punched Plaintiff approximately seven times in rapid succession.[14] At one point it appears that Plaintiff briefly falls to his knees.[15] Plaintiff contends that the force used by Ritter resulted in serious bodily injuries, including broken

---

[7] *Id.*, at p. 144.
[8] *Id.*
[9] *Id.*, at p. 70.
[10] *Id.*
[11] *Id.*, at p. 71.
[12] *Id.*
[13] *Id.*, at p. 72.
[14] ECF No. 33, Exhibit 4, Video.
[15] *Id.*

bones in Plaintiff's face.[16] Ritter was ultimately terminated by LPC following an internal affairs investigation.

The present motions were filed by Ritter and LCG challenging each of the claims asserted by Plaintiff. The motions have been fully briefed.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[17] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[19] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[20]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[21] "Credibility

---

[16] ECF No. 1, ¶ 6.
[17] Fed. R. Civ. P. 56(a).
[18] *Id.*
[19] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[20] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[21] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).

determinations are not part of the summary judgment analysis."[22] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[23]

### III.
### LAW AND ANALYSIS

A. **Ritter Motion for Summary Judgment.**

1. **Plaintiff's Fourteenth Amendment Claim.**

Ritter first argues that Plaintiff's Fourteenth Amendment Due Process Claim must be dismissed because the Fourth Amendment applies to his excessive force claim. Plaintiff's Amended Complaint asserts that the force used by Officer Ritter was the result of actions with "evil motive and reckless and callous indifference" to plaintiff's federally protected rights, and that the force used was "so unnecessary and excessive that it shocks the conscience" thereby violating his constitutional rights to be free from the use of excessive force, the right not to be deprived of liberty without due process of law, and the right to equal protection under the law.[24]

Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular type of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."[25] In *Graham*, the Supreme Court stated that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the substantive due process clause of the Fourteenth Amendment. When a

---

[22] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[23] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[24] ECF No. 12, ¶¶11, 14.
[25] *Graham v. Connor*, 490 U.S. 386 (1989).

4

claim is properly analyzed under the Fourth Amendment, the Fourteenth Amendment is inapplicable.[26] Ritter, therefore, argues that since the Fourth Amendment applies to the Plaintiff's excessive force claim, his substantive due process claim under the Fourteenth Amendment is precluded.[27]

Plaintiff counters that his Fourteenth Amendment Due Process claim was asserted in the alternative, in the event that Plaintiff was determined to be a pretrial detainee. Specifically, if Plaintiff was a pretrial detainee at the time of his claim, the Fourteenth Amendment, rather than the Fourth Amendment, would apply. Ritter has acknowledged that the question of whether Plaintiff was pretrial detainee is a disputed fact.[28] As such, the Court will permit Plaintiff's Fourteenth Amendment Due Process claim to proceed as an alternative request for relief in the event that Plaintiff is determined to be a pretrial detainee.

2. **Was Ritter's Use of Force Objectively Reasonable?**

Ritter next argues that Plaintiff's Fourth Amendment excessive force claim must fail as there is no genuine issue of material fact that Ritter's use of force was "objectively reasonable." Excessive force claims are governed by the Fourth Amendment's reasonableness standard.[29] An excessive force claim requires proof that the plaintiff "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[30] Excessive force claims are fact-intensive—force that may be deemed objectively unreasonable in one case may be objectively reasonable in another.[31] Whether

---

[26] *Id.*
[27] *Malbrough v. City of Rayne*, 2019 WL 1120064 (W.D. La. 2019).
[28] ECF No. 42, p. 2.
[29] *Plumhoff v. Rickard*, 572 U.S. 765, 774, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014).
[30] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).
[31] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

the force applied in a given context is excessive turns on the totality of the circumstances.[32] Courts must thus examine a case from the perspective of a reasonable officer on the scene, focusing on the facts and circumstances of each particular case.[33] Courts must also consider only the facts that were knowable to the defendant officer at the time,[34] while being careful to avoid second-guessing a police officer's on-the-scene assessment of the danger presented by a particular situation.[35]

      Both sides rely heavily on the opinions of Senior Corporal Robbie White and Senior Corporal Thomas Marceaux who were both involved in the internal affairs investigation involving Ritter's use of force against Plaintiff. Both sides assert that the opinions of White and Marceaux support their position concerning whether Ritter's actions were reasonable. Plaintiff argues that both White and Marceaux testified that Ritter's use of force was excessive. Ritter argues that both White and Marceaux actually testified that Ritter should have used even more force, thus indicating that Ritter's force must be reasonable.

      The record includes the opinions that White and Marceaux expressed about Ritter's actions toward Plaintiff.[36] Both provided statements to internal affairs, testified at Ritter's civil service hearing, and sat for depositions. Their testimony was consistent on each occasion that Ritter did not comply with the training that he received from LCG, and that Ritter's use of force was excessive in that he was trained that a specific technique or use of force should not be repeated seven or eight times because if a certain type of force was ineffective, a different type of force should be used.[37] The Court finds that the opinions of White and Marceaux are not determinative as to whether Ritter's use of force was unreasonable. While their opinions are relevant as to the

---

[32] *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011).
[33] *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018).
[34] *White v. Pauly*, 137 S. Ct. 548, 550, 196 L. Ed. 2d 463 (2017).
[35] *Ryburn v. Huff*, 565 U.S. 469, 477, 132 S. Ct. 987, 181 L. Ed. 2d 966 (2012).
[36] ECF No. 34, Exhibits 3, 8 and 9; ECF No. 40, Exhibits 2, 3, 4, 5, 7 and 8.
[37] *See* ECF No. 34, Exhibits E, H and I.

training that Ritter and other officers receive with regard to the types of force which should be used, their opinions alone do not establish the reasonableness or unreasonableness of Ritter's actions in striking Plaintiff multiple times while Plaintiff was handcuffed with his hands behind his back.

The Court also notes that Ritter was terminated as a Lafayette police officer following an administrative investigation by the Lafayette Police Department.[38] Following that investigation, Lafayette Police Department concluded that Ritter's actions violated his duty of professional conduct and the Department's rules regarding use of force.[39] Ritter's Termination Letter specifically notes a violation of the rule which requires that "officers shall only use the type and degree of force that is reasonably necessary to affect an arrest."[40] This conclusion also creates a genuine issue of material fact regarding the reasonableness of Ritter's actions.

Finally, the Court has reviewed the video of the incident submitted by each of the parties. Based upon the evidence in the record, the Court finds that there is a genuine issue of material fact regarding the reasonableness of Ritter's actions. Accordingly, Ritter's Motion for Summary Judgment on this issue must be denied.

### 3. Qualified Immunity.

Next, Ritter argues that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[41] When a defendant raises the qualified immunity defense, the burden shifts

---

[38] ECF No. 39, Exhibit 5.
[39] *Id.*
[40] ECF No. 40, Exhibit 5, Termination Letter dated April 6, 2021.
[41] *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

to the plaintiff to demonstrate the inapplicability of the defense.[42] Qualified immunity is "immunity from suit rather than a mere defense to liability" and should, therefore, be resolved at the earliest possible stage in the litigation.[43]

Whether an officer is entitled to qualified immunity turns on a two-prong inquiry. The first prong requires the plaintiff to demonstrate that the defendant violated a constitutional right.[44] In other words, "the plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury."[45] The second prong requires the plaintiff to establish that the right allegedly violated by the defendant's conduct was "clearly established" at the time of the defendant's alleged misconduct.[46] "The constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right."[47] This requires the plaintiff "to 'identify a case'—usually, a 'body of relevant case law'—in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution].'"[48]

Addressing the first prong of the defense, the Court previously concluded that there are genuine disputes of material fact with respect to Plaintiff's Fourth Amendment excessive force claim. Specifically, the video of the incident shows that Plaintiff was not cooperative while Ritter escorted him from the police unit to the LPPC intake door. Plaintiff walked slowly and, several times appears to back up against Ritter.[49] As they approached the intake door, Plaintiff appears to stumble to the side, away from Ritter.[50] Ritter responds by placing his hands on Plaintiff's head

---

[42] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).
[43] *Id.*; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).
[44] *Harlow*, 457 U.S. at 818.
[45] *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 335–36 (5th Cir. 2020).
[46] *Id.*
[47] *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998).
[48] *Bartlett*, 981 F.3d at 330 (quoting *District of Columbia v. Wesby*, ⸺ U.S. ⸺, 138 S. Ct. 577, 590 (2018)).
[49] ECF No. 34, Manual Attachment.
[50] *Id.*

and neck and pushes Plaintiff face first into the wall next to the intake door; it appears that Ritter instructs Plaintiff to face forward. Plaintiff attempts to turn toward Ritter and, again, Ritter holds Plaintiff by the head and neck to turn him around; Ritter then pushes Plaintiff's face up against the wall next to the intake door, hitting Plaintiff's head against the wall.[51] The third time that Plaintiff tried to turn around, Ritter administered seven closed-fist punches to Plaintiffs' head and face that resulted in significant injuries including, according to Plaintiff, a broken jaw.[52]

Both White and Marceaux opined that it was an important safety consideration to prevent a handcuffed subject from facing an officer because that position could allow the subject to attack the officer using his head or feet even if restrained with handcuffs.[53] Accordingly, some use of force was likely reasonable to prevent Plaintiff from turning and facing Ritter. However, an officer's use of force "must be commensurate with the suspect's level of contemporaneous, active resistance."[54] Here, the video footage in the record shows that Ritter punched Plaintiff in the face and head at least seven times without pausing between punches. Ritter never appears to pause to give Plaintiff an opportunity to comply with his instructions. The Court further notes that there was a very low risk of Plaintiff escaping from Ritter's custody as his hands were restrained behind him with handcuffs, he was intoxicated and appeared unsteady, and he and Ritter were standing immediately outside the intake door. Indeed, LPCC officers opened the intake door shortly after Ritter administered the seven punches. Considering the evidence in the summary judgment record, the Court concludes that Plaintiff has met his burden of showing that there are genuine disputes of material fact and that a jury could return a verdict in favor of Plaintiff on his Fourth Amendment excessive force claim.

---

[51] *Id.*
[52] *Id.*
[53] *See* ECF No. 34, Exhibits E, H and I.
[54] *Bartlett*, 981 F.3d at 335.

Plaintiff, however, must also establish that Ritter's actions violated "clearly established" law. The Fifth Circuit has held that it is clearly established law that officers "engage in excessive force when they physically strike a suspect who is not resisting arrest."[55] Here, Plaintiff was under arrest with his hands handcuffed behind his back. It does not appear from the evidence in the record that Plaintiff was attempting to escape or that he was attempting to use physical force against Ritter. At most, Plaintiff appears to be uncooperative and "passively" resisting Ritter's efforts to remove him from the police unit and to move him into the LPCC booking room. The Fifth Circuit has explained the distinction between "active" and "passive" resistance:

> The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive. While "a suspect's refusal to comply with instructions" may indicate that physical force is justified, officers must also select the appropriate "degree of force." To stay within constitutional bounds, an officer must use force "with measured and ascending actions that correspond[ ] to [a suspect's] escalating verbal and physical resistance." Therefore, force may be less justified or unjustified when a suspect engages in "passive resistance," as opposed to "active resistance." As to a passively resisting suspect, an officer does not take measured and ascending action by "immediately resort[ing] to taser and nightstick without attempting to use physical skill, negotiation, or even commands."[56]

Here, Ritter punched Plaintiff seven times without pausing even though Plaintiff was restrained with his hands handcuffed behind his back. Even if Plaintiff's conduct prior to Ritter's use of force amounted to resistance that justified the use of some force, a trier of fact could reasonably find that Plaintiff ceased to resist Ritter after the first blow and that Ritter's continued strikes to Plaintiff's face and head were excessive. As noted above, Plaintiff appears to take a defensive posture shielding his face from further blows following the first punch and does not appear to be resisting Ritter. The Fifth Circuit has observed that "summary judgment is inappropriate when the timing of the officer's force may or may not have corresponded to the timing of the suspect's resistance,"

---

[55] *Bartlett*, 981 F.3d at 342 (citing *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018)).
[56] *Id.* at 332-33 (internal citations omitted).

and that for "an officer's force to be reasonable, it must be commensurate with the suspect's level of *contemporaneous, active resistance*."[57] In sum, a trier of fact could reasonably conclude that Plaintiff was not actively resisting when Ritter delivered seven closed-fist blows to Plaintiff's face and head. If so, Ritter's actions violated clearly established law and he is not entitled to qualified immunity.

### 4. Plaintiff's State Law Claims.

Ritter challenges Plaintiff's state law claims for assault and battery with the same arguments raised with respect to Plaintiff's federal claims—namely that there is no genuine issue of material fact that Ritter's use of force was objectively reasonable. Under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[58] A claim for battery requires proof of "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact ...."[59] Claims for assault and battery against a law enforcement officer acting in the course of employment require proof that the law enforcement officer acted with unreasonable or excessive force.[60] "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case," and factors to consider are: "(1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the

---

[57] *Id.* at 335 (emphasis added).
[58] La. Rev. Stat. Ann. § 14:36; *see also Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (defining assault as "the imminent threat of a battery") (citation omitted).
[59] *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 5/20/03).
[60] *Gerard v. Parish of Jefferson*, 424 So.2d 440, 444 (La. App. 1982); *see also Taylor v. United States*, 1991 WL 280066 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

arrestee, and (7) the exigencies of the moment."[61] For the same reasons stated above with regard to Ritter's motion challenging Plaintiff's federal claims, the Court finds that there are genuine issues of material fact regarding the reasonableness of Ritter's actions that preclude summary judgment.

### B. LCG's Motion for Summary Judgment.

#### 1. Vicarious Liability Claim.

LCG first moves for summary judgment dismissing any vicarious liability claim against LCG based on Plaintiff's § 1983 claims against Ritter. The Supreme Court has held that *respondeat superior* or vicarious liability does not apply to claims brought under § 1983.[62] Plaintiff, however, states in his Opposition that he is not pursuing any vicarious liability claims against LCG based on his § 1983 claims against Ritter. Since it appears that there is no dispute on this issue, LCG's Motion will be granted as to any claim for vicarious liability grounded on Plaintiff's § 1983 claims against Ritter.

Plaintiffs also assert a claim against LCG for vicarious liability under article 2320 of the Louisiana Civil Code. Unlike in § 1983 actions, "[m]unicipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."[63] Vicarious liability requires an employment relationship but, even if such a relationship exists, "an employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of employment with the former."[64] LCG specifically states it is not seeking dismissal of the vicarious liability claims based

---

[61] *Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 12/19/77).
[62] *Monell v. New York City Dept of Social Services*, 436 U.S. 658, 692-93 (1978).
[63] *Deville v. Marcantel*, 567 F.3d 156, 173–74 (5th Cir.2009) (citing *Brasseaux v. Town of Mamou*, 752 So.2d 815, 820 (La. 2000) ("Although an employment relationship may in fact exist, the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of employment with the former.")).
[64] *Brasseaux,* 752 So.2d at 820.

12

on Plaintiff's state law claims. Accordingly, given the Court's ruling with respect to Plaintiff's state law excessive force claim against Ritter, the undisputed fact that Ritter was employed by LCG, and LCG's concession that it is not seeking dismissal of any state law vicarious liability claims, Plaintiff's state law vicarious liability claim against LCG survives summary judgment.

    2.    **Plaintiff's *Monell* Claims Against LCG.**

Next, LCG seeks dismissal of Plaintiff's *Monell* claims against LCG. Plaintiff alleged in his First Supplemental and Amended Complaint that LCG allowed a culture and environment to develop within the LPD wherein the use of excessive and unjustified force was allowed and tolerated without proper or adequate investigation or discipline of the officers who engaged in such behavior.[65] Plaintiff also alleged that LCG failed to properly supervise, monitor and/or train its police officers and failed to properly investigate the misconduct of its police officers. Plaintiff further claimed that LCG implicitly or explicitly adopted careless and reckless policies, customs or practices which caused Plaintiff's damages,[66] and LCG had actual and/or constructive knowledge of the careless and reckless policies, customs or practices to constitute deliberate indifference.[67] Plaintiff has now conceded that following discovery, there is no evidence to support his claims for negligent hiring, inadequate training, supervision, monitoring, and failure to investigate and discipline.[68]

The only remaining claim under § 1983 against LCG is that LCG had a custom or practice in place that resulted in a violation of Plaintiff's constitutional rights. A municipality such as LCG is liable only for acts directly attributable to it through some official action or imprimatur.[69] To

---

[65] ECF No. 12, ¶ 8.
[66] *Id*, ¶ 21.
[67] *Id*, ¶ 23.
[68] *See* ECF No. 39, p. 7.
[69] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010); citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

establish municipal liability under § 1983, a plaintiff must show that deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy."[70] A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom."[71]

The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or other policy making authority. Under the second prong, "actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."[72] A municipal policy maker is someone who has the responsibility for making law or setting policy in any given area of a local government's business.[73] Moreover, "[m]unicipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered."[74] Whether an official possesses final policy making authority for purposes of municipal liability is a question of state and local law.[75]

Under the third prong, Plaintiff must prove moving force causation. To do this, Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[76] Stated differently, the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right

---

[70] *Id.* citing *Monell,* 436 U.S. at 691.
[71] *Valle,* 613 F.3d at 541-542; citing *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002).
[72] *Id.* at 542; citing *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (en banc).
[73] *Id.*; citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125; 108 S.Ct. 915, 999 (1988).
[74] *Id.* at 542; citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 484 n. 12, 106 S.Ct. 1292 (1986).
[75] *Id.*
[76] *Id.* at 542; citing *Bd. of County Commissioners v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).

will follow the decision.[77] Deliberate indifference is a high standard, a showing of simple or even heightened negligence will not suffice.[78]

Proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy, as "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for municipal liability.[79] Thus, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations.[80] To demonstrate a governmental policy or custom under § 1983, a plaintiff must show "at least a pattern of similar incidents in which the citizens were injured."[81]

Plaintiff cites to Ritter's testimony that on several occasions his supervisors directed him to "do some wrong things."[82] Specifically, Ritter testified about two incidents. First, he testified that a shift supervisor told him to turn off his camera. Second, he testified that a lieutenant told him "if you need to put hands-on to go one – to put hands-on 100 percent."[83] Ritter stated that those comments influenced his thinking about whether to use force as an officer; but he also stated that these statements had no bearing on his actions the night of the incident with Plaintiff.[84] A plaintiff may point to prior occurrences of constitutional violations to plead a *Monell* claim against a municipality. Those prior occurrences, however, must be not only similar to the conduct at issue in the plaintiff's case but also persistent as opposed to sporadic or isolated.[85] This persistency requirement ensures that the alleged pattern of unconstitutional actions by municipal officers is

---

[77] *Id.*
[78] *Id.*
[79] *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984).
[80] *Id.*
[81] *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).
[82] ECF No. 39, Exhibit 7, p. 162.
[83] *Id.*
[84] *Id.*
[85] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

based on conduct that has "occurred for so long and with such frequency that the course of conduct demonstrates the [municipality's] knowledge and acceptance of the disputed conduct."[86]

As an initial matter, the deposition testimony cited by Plaintiff is too vague and general to show past instances of unconstitutional conduct. Moreover, Plaintiff has not shown that the conduct reflected in Ritter's testimony is similar to the conduct at issue in the present case. Nor does Ritter's testimony satisfy the "persistency" requirement by showing a persistent pattern of unconstitutional conduct. Plaintiff's *Monell* claim against LCG must, therefore, be dismissed as Plaintiff cannot establish the elements of that claim.

### 3. Claims For Jaw Surgery and Related Medical Expenses and Damages.

LCG argues that Plaintiff is not entitled to expenses for jaw surgery since his jaw was broken and in need of surgery prior to the incident with Ritter. In December of 2019, Plaintiff had fallen and struck his jaw on concrete steps leading to a fracture of his left and right lower jaw.[87] Dr. John Dean performed surgery on the jaw and installed hardware to help the fractures heal.[88] In May or June of 2020 Plaintiff returned to Dr. Dean and his left jaw fracture had not healed. Dr. Dean performed additional surgery at that time.[89] A CT scan of Plaintiff's jaw taken in September of 2020, approximately three months prior to the incident with Ritter. The CT scan showed the left jaw was still fractured and a nonunion of the left lower jaw still existed.[90] Dr. Fuson performed an additional surgery on Plaintiff's jaw on December 10, 2021.[91] Fuson testified that he believed the surgery would have been needed jaw surgery regardless of the incident with Ritter but qualified that it was a matter of the extent of the surgery he needed.[92]

---

[86] *Id.*
[87] ECF No. 33, Exhibit 2, Plaintiff's Deposition, pp. 33-34; and Exhibit 6, Deposition of Dr. Fuson, pp. 12-14.
[88] Plaintiff's Depo., pp. 34-36.
[89] *Id.* at pp. 37-38.
[90] Fuson Depo. at pp. 17-18.
[91] *Id.* at pp. 18-19.
[92] *Id.* at pp. 33-34, 46-47.

LCG also retained the services of Dr. James White, a local otolaryngologist (ENT), whose expertise includes examining, diagnosing, treating, and performing surgery on patients who have jaw injuries. According to Dr. White, there was a pre-existing fracture and/or nonunion of Plaintiff's left jaw before the Ritter incident, and there was no difference in the CT scans performed before and after the incident. Thus, Dr. White concluded Plaintiff would have needed the surgery performed by Dr. Fuson regardless of the Ritter incident.[93]

Plaintiff, however, testified that after September 2020, he was not seeking further medical treatment for his jaw and "felt like it was pretty much healed."[94] Plaintiff testified that he was able to eat normally and recalled eating steak and potatoes for dinner on the night of the incident.[95] Considering the summary judgment record as a whole, the Court concludes that there is a genuine issue of material fact as to whether Plaintiff's need for additional jaw surgery resulted from Ritter's use of force. LCG's Motion on that issue must, therefore, be denied.

### 4. Other Damages.

LCG also seeks dismissal of Plaintiff's claims for disability, lost wages and loss of future earning capacity. Plaintiff did not respond to this portion of the LCG's Motion. Plaintiff failed to follow-up with Dr. Fuson after the surgery. As a result, Dr. Fuson could not comment on whether Plaintiff sustained any disability or whether he has an ability or inability to work.[96] In response to Interrogatory No. 4, Plaintiff advised that he is not making a claim for lost wages or lost earning capacity.[97] Counsel for Plaintiff also confirmed that Plaintiff is not seeking lost wages during Plaintiff's deposition.[98] It appears that Plaintiff has abandoned his claims as to these elements.

---

[93] ECF No. 33, Exhibit 7.
[94] Plaintiff's Depo., pp. 43.
[95] *Id.* at p. 42.
[96] ECF No. 33, Exhibit 6, p. 44.
[97] ECF No. 33, Exhibit 5.
[98] ECF No. 33, Exhibit 2, pp. 9-10.

Accordingly, LCG's Motion will be granted as to these elements of damages and Plaintiff's claims for disability, lost wages and loss of future earning capacity are dismissed.

A separate order in conformity with the foregoing reasons will be entered into the record.

THUS DONE in Chambers on this 21st day of February, 2024.

ROBERT R. SUMMERHAYS<br>
UNITED STATES DISTRICT JUDGE